Our fifth case this morning is Wanko v. Board of Trustees of Indiana University. Mr. Imahuro, is that how it's pronounced? Imajuro. Ah, okay. Thank you.  Good morning, Your Honors. If it may please the court, my name is Ike Imajuro. I am the counsel on behalf of the appellant in this case, Katherine Wanko. Ms. Wanko is a former dental student at Indiana University School of Dentistry. Her jurisdiction is proper before this court. This case was filed under Title VI of the Civil Rights Act of 1964. And the appeal is taken from a grant of summary judgment at the district court level. And pursuant to 29 U.S.C. 1291, this court has proper jurisdiction. Its final judgment was issued in this case, disposing of all appellant's claims. The issues for this court to consider are pretty narrow. A couple of issues. The first issue that this court should address is whether the district court abuses discretion. When it adopted Indiana University's objection during discovery in this case, and the objection was made pursuant to the Family Educational Rights and Privacy Act. This objection precluded the appellant from obtaining student records that she needed to fully prosecute her claims. And the, in order to prosecute her claims, Ms. Wanko had to make a prima facie case in this particular case. And the prima facie case she had to prove was that of four elements. The first is that she was a member of a protected class. She met the school's legitimate educational expectations. She suffered an adverse educational action. And that she received worse treatment than that of similarly situated students in the protected class. The court in this case considered the initial allegations. And at the outset of the case, the appellees filed a 12-6 motion to dismiss. Ms. Wanko survived that. And the narrow allegations in this case made by Ms. Wanko that survived the entry of the motion to dismiss, was that two to three similarly situated students and members of a non-protected class failed single-tooth indirect restorations, or in this case it's known as STI. In the spring of 2015, and those students that were below the remediation cutoff, but were still allowed to be promoted to the second year on probation, while Ms. Wanko was not allowed to be promoted to second year and she had to repeat her first year. In order for Ms. Wanko to fully prosecute her claims, she needed discovery in this case. And that discovery, quite frankly, hinged upon whether she'd be able to obtain student records from the university. Well, did she already know the individuals that she was in school with that were probably in the same category? Judge, so she, Ms. Wanko did know of two, she, excuse me, step back for a second. Ms. Wanko was told from one of her professors that there were two to three students, just like herself, that we were repeating the first year, excuse me, that would be, that failed STI. And she did not know the particular names of the individuals, but she did have that information from the professor. I think it's Dr. Rifai. Well, what did she expect to get from discovery? Because they had some policy where you simply don't give names. That's for student records. That's correct, Your Honor. I believe that Ms. Wanko was looking to receive true and accurate data of the student records in order to prove or prosecute her allegations. She was looking to obtain student records that could have been properly redacted in this case and could have been settled at the district court level, but in this case it was not. So she was looking to get student records to allow her to prove one of the elements of the pre-invasion case, which is that she had, they were similarly situated students that were treated better than she was. She actually, the university produced a lot of information.  It produced all the demographic information she would need to ascertain the race or racial demographics of the class and their grades, and so she had all the information she needed to find, to see if there was a similarly situated comparator not in her protected class. And so I don't know what more the names would have done. And the names are protected by FERPA, and the district court engaged in a balancing of interests here and determined recently, it seems to me, that the names were not required to be disclosed. In other words, the court was unwilling to subordinate the students' FERPA interests in keeping their names protected to your client's need for discovery since she had everything she needed. She had all the demographic information she needed to determine if there was a comparator, and she had all the grades. That's correct, Your Honor. I think that what has been sort of convoluted in this issue is that Mrs. Wanko is not after names per se. Mrs. Wanko is after student records. The names of the students can be properly redacted if that is agreed to by the counsel in this case. Names are just somewhat of a last resort. I think we're looking at actual student records, and I think that the... Well, the records are also protected under FERPA. That's correct. Well, no, that's not correct. They're not privileged information under FERPA. It's not privileged, but they're protected. They are protected. It's not an evidentiary privilege. That's correct, Your Honor. But they do enjoy federal protection, student records, that is. That is correct. They do enjoy federal protection, but they are not exclusively protected by that statute. And I believe the Sixth Circuit has suggested that properly redacted student records can be provided during discovery. And that is something that goes to the heart of the allegation as to whether there's a comparator in this case. Mrs. Wanko was looking for official transcripts, which could have been properly redacted. The admissions records, which I believe is in the record that she had provided to the university before she was admitted, that has ethnic data, Mrs. Wanko was looking for probationary records, perhaps records that would have suggested which students were allowed to move forward or, excuse me, were on probation at the time or within her class at the time. And she was looking to find out which students were, in fact, promoted to the second year despite failing STI. And that was blocked from her due to, we believe, the erroneous application of the Family Educational Rights and Privacy Act in this case. I believe that we have cited numerous cases in this instance, and one in particular, in this particular circuit, Memorial Hospital, which suggests that in order for a plaintiff to prove these allegations, these narrow allegations, you're going to have to have some discovery that goes to the heart of the protected student records in this particular case. I don't believe that the issue of Title VI, the Civil Rights Act, and FERPA have collided in any particular circuit, but that Memorial Hospital case is the most analogous case to the situation that we are in now. It doesn't discuss FERPA, per se, but it does discuss the need for somewhat protected files from the... What would you have done with those records? Because the data that the university produced demonstrated conclusively that there was no similarly situated comparator. And that's the problem that we had, Your Honor. There were only two students who failed this particular class, and they were both allowed to retake it. The other one passed. Your client didn't. So... Understood. End of story. Not necessarily, Your Honor. The problem was we had issues with veracity in this case, and veracity is very important with respect to the allegations. Do you have any evidence to show that this data has been doctored up by the university? We had laid out our case with respect to the inconsistencies with their spreadsheet data, which, by the way, I believe was used just as another case that we cited in the Eastern District of Pennsylvania. But their data was not matching up with the data that we had, and we had very limited data. Obviously, we had the particular data provided initially by the general counsel in this case, but that data was not matching up initially. When you have that credibility concern initially like that, the red flags should go up from a plaintiff's perspective. And that should—there's no credibility test, right, with respect to FERPA, right? But in this particular case, we have a credibility issue, and that triggered our—or didn't trigger it, but that reaffirmed our position that we should be given student records in this case, as opposed to relying on the defense or the defense telling us that these records are actually accurate. That's not to mention one more last point is that we did also send out interrogatories in this case, which were inconsistent with the spreadsheet data that was provided to us by the university. They're suggesting that no one failed STI other than Ms. Wanko. But, again, initially or before the case, you've got limited data or limited evidence from the university that suggests that, no, there is actually one person other than Ms. Wanko that failed STI. That is where we have issues with respect to veracity and credibility in this case. I understand that there could be some concern with the student privacy, with the records being disclosed, but there's a proper procedure that should be followed in this case, just as it was in the Eastern District of Pennsylvania. You've used all your time. Thank you, Your Honor. Thank you. Mr. Cohen. May it please the Court. My name is Hamish Cohen. I'm pleased to be here today on behalf of the appellee, the Indiana University Board of Trustees. As the Court noted, the District Court in this case did not abuse its discretion. The District Court conducted an appropriate Rule 26 balancing analysis where it considered privacy concerns implicated by FERPA. At no point did the university argue that FERPA created a blanket privilege. At no point did the District Court so find. Rather, the university, in response to numerous force sets of discovery, produced statistical summary information, which is the sort of information that has been approved by other courts in other contexts, relating to racial discrimination cases at FERPA. Appellant is an African-American, naturalized U.S. citizen. She enrolled at the IU School of Dentistry in August of 2014. She received two failing grades her first year in STI and RP. There was only one other similarly situated student who was also an African-American woman. That student successfully remediated RP and matriculated to the second year. As such, there is no evidence in the record of any comparative student. The summary judgment was appropriate. Did she go to, after flunking the two courses, did she have an opportunity, or did she go to each teacher and ask questions and challenge why she flunked? There's nothing in the record on that point, Your Honor. Because when you look at something like that, the teacher, I don't know, maybe, I don't know about class participation or all kinds of other things where she got, objectively at least, I think the teacher would be able to show her that she didn't do a good job on the exam. And now she's trying to see if she can find somebody else that didn't do well, I suppose, to look for maybe a racial discrimination. But, in fact, she did take one of them over and didn't pass it either. That is correct, Your Honor. She subsequently failed STI a second time and was eventually dismissed from the university for failure to meet its reasonable academic needs. The record does not speak to her conversations with her professors about her performance. There's nothing to indicate that she did so. To the court's point, the university did produce considerable information. This concept or this accusation that the university withheld information is not true. The university provided the appellant with the grades of each of her classmates in every course they took, each classmate's overall GPA, and gender and race of each classmate. And each student was assigned a number. And through that, the appellant could track each student's performance through the dental school and see also their gender and their race. Did each number identify the race? Yes, Your Honor, the race and gender of each student. So there's not any question about that. That is absolutely correct, Your Honor. And furthermore, it's important to note that the appellant below did request the individual identifying information. And I'm going to quote from their reply brief in support of their motion to compel, which they filed after the magistrate had already denied the motion early once, in which they said, quote, The data the plaintiff seeks is inextricably intertwined with the actual names of each student. And that's record at 77 at 2. And so the issue here always was the names, and the position that the appellant took below was always that it needed the specific identifying information below. Ultimately, even if, though, the appellant had said that we would accept the redacted information, there was no requirement for the court in the exercise of its reasonable discretion to order that information to be produced. The case they cite from Pennsylvania is K.V. Drexel. And I think that court set the standard forward well. That court said, When a third party seeks disclosure of educational records covered by FERPA, the trial judge, in the exercise of her discretion, must conduct a balancing test in which the privacy interests of the students are weighed against the genuine need of the party requesting the information. That's exactly what the court did here. There's no abuse of discretion. Additionally, that court cited NAGLAC with Pennsylvania State University with approval, noting that the problem of avoiding disclosure of identifying information under FERPA may be remedied by providing the information requested in statistical summary form. That's at page 6 of the K, citing NAGLAC v. Pennsylvania State University, 133rd FRD 18 at 24. Finally, the court noted, even in the K case, that there was no need for the personal identifying information to be produced, stating the fact that the plaintiff in that case would not receive the names, addresses, or other identifiable information about the students, although it might be helpful to the plaintiff, would not deprive him of the opportunity to prove his case. Again, there's no abuse of discretion here. What the court did was well within the bounds of reason. As to the allegation that somehow the university information was unreliable, that's obviously very disturbing and it was not supported, the plaintiff made two arguments below to the court, and the court promptly considered both of them and made veracity determinations and rejected them. Both the magistrate judge and the district court judge did so. The arguments below were, number one, the record could not be verified because they were mechanically generated summaries. To be frank, I don't understand the nature of that objection. The second one was that the comparative student's GPA, the other African-American woman who also failed STI but did successfully remediate RP, was different in the records than was communicated to counsel prior to the lawsuit, but that was easily explainable. Her GPA prior to the lawsuit, which was 2.131, was before she remediated RP. Her GPA after 2.568 was after she remediated RP and so her grade changed on her transcript and all of that was explained to the court. The court properly considered that and found that the information provided by the university was reliable. What was Wanko's average? What was it? Sorry. You just mentioned a grade level, 2 point something or other. What was her number? The appellants? Yes. It was originally right at 2.0 and then over time as she failed additional classes and was unable to remediate it, it fell well below the 2.0 level required by the university, which is why she was eventually dismissed. Is that an objective standard to get below that amount and you don't get to stay there? Yes, your honor. The university's policies provide that students have to maintain a 2.0 grade point average to continue to matriculate through the years at the dental school and so when she failed to maintain that over a period of time, she was eventually dismissed for academic reasons, which is another reason why the grant of summary judgment was appropriate because not only could she not demonstrate a comparator, which is fatal to her case because she only ever tried to prove indirect evidence of discrimination and therefore under Brewer v. Board of Trustees, her claim would fail for lack of a comparator. She also could not prove that she met the university's reasonable academic standards. She survived the motion to dismiss on that issue because she alleged in her complaint that she successfully remediated her RP case, but that was actually not true. Additionally, the university also answered interrogatories and in those interrogatories, the university explained that there were no other Caucasian students that failed STI. In fact, there were only two students who failed the STI class in 2015 and one of them was the appellant and the other one was an African American woman  And she successfully passed it the following year? No, she never passed STI. Ultimately, therefore, the appellant could not demonstrate a genuine need for personal identifying student records. She was provided with statistical summaries sufficient for her to test her case as well as interrogatory responses. Furthermore, as the court found she was dilatory in her discovery, she did not seek to reschedule depositions and permitted the discovery cutoff. Finally, it's worth noting that the summary judgment ruling in this case was not premature or untimely and did not violate any concepts of due process. Summary judgment was filed after the close of discovery. Additionally, even if somehow the plaintiff could show that the record was undeveloped, this court requires a clear showing of actual and substantive prejudice to reverse that summary judgment and there's no showing here because ultimately she could not even demonstrate a genuine need for additional information. And finally, I won't pretend that I fully understand the due process argument raised, but ultimately the appellant had an opportunity to be heard at a reasonable time and a reasonable place. Accordingly, the trustees of Indiana University respectfully request that this court affirm the district court's reasons, rulings, and opinions below. Thank you very much. Thank you. Mr. Imaturo, your time had expired, but I'll give you a minute if you have something you'd like to say on rebuttal. Yes, thank you, Your Honor. Your Honor, just a few points. The K decision cited by counsel was a decision that allowed for the university student to have the spreadsheet data and also have a summary and obtain the student records that were actually redacted. So there was a proper procedure that the court tried to follow in that case that allowed for judicial oversight or allowing for the evidence to be seen by the court first, both pieces of evidence to be seen by the court and then allowed to be provided to the plaintiff in a redacted form. To go to the summary judgment in 5060 issue, I believe that there were outstanding issues at the time of summary judgment that plaintiff's counsel did raise through objection and was waiting for the objections to be heard before the district court did grant summary judgment. Ultimately, the district court did rule on every single issue at the same time. We believe that 5060 should have stayed the ruling on summary judgment. Thank you, Your Honor. All right, thanks to both counsel. The case is taken under advisement.